Todd Ashker, C58191
Box #7500/D1-119
Crescent City, Cal. 95532

Plaintiff, In pro-se

FILED
2007 APR 23 PM 2:28
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND-DIVISION

TODD L. ASHKER,
  Plaintiff,
vs.
EDWARD ALAMEIDA, JR., et al.,
  Defendants.

CASE No.: C05-3759 CW [EDL]

Plaintiff's Notice Of Motion And Motion To Submit Clarification, And Additional Evidence In Support Of Motion For Protective Order [L.R. #72-3]

To defendants and their counsel of record, PLEASE TAKE NOTICE:

The plaintiff, proceeding pro-se in the above numbered case filed a motion for a protective order on Sept. 29, 2006. Per Court directive, the Hon. Magistrate Judge Laporte, considered the matter, and issued a "Report and Recommendation Re: Plaintiff's Motion For Protective Order," on April 3, 2007.

Plaintiff has filed "objections" to (2) issues related to the [rept] recomm's,... re: modification - repair of arm-brace; and, review of medical records - physical examination by a nuetral pain specialist.]

Plaintiff additionally respectfully moves the Honorable Court for permission to submit the below correction(s) to the factual circumstances concerning his retaliation issues; as well as the presentation of new evidence regarding the April 5, 2007 confiscation of his incell-physical therapy aides, and discontinuance of specialty-clinic physical therapy since early March 2007. The above issues are all either part of, or related to the record(s) considered by the Magistrate.

1.

# I.

## CLARIFIED RETALIATION CLAIM(S)

Plaintiff asks the court to please consider the below clarification of the chronology of factual circumstances, regarding his retaliation issues. The clarification is necessary in response to the following portions of the April 3, 2007, Report and Recommendations:

... Plaintiff alleges that the medical staff has retaliated against him for filing 602 appeals.... Plaintiff points out that Dr. Sayre did not raise an issue about the need to discontinue Tramadol after FNP Risenhoover reordered Tramadol for him in March 2006, but he acknowledges that even earlier, in 2005, Dr. Rowe had indicated that she would reduce his pain medication. Id., para 33 and Ex. 2. [Pl's 10/10/05, 602 Appeal and First Level Reviewer's Response by Dr. Rowe ["informed you that Tramadol is only indicated for short term relief of acute pain, like post-operative pain"]. [See: 4/3/07 Report & Recomm's, at p.#2: 20-28 and p.#3: 1-3]

... Thus, Plaintiff has at most demonstrated a serious question on the merits of his First Amendment-based claim for retaliation, but not a probability of success, especially in light of the undisputed fact that the medical staff had already raised the issue of ending Plaintiff's use of Tramadol before he filed the 602's in question [Report and Recomms, at p.#7: 4-15]

Plaintiff respectfully seeks to clarify the following facts, and evidence, in support of his claim that PBSP-Medical Staff have retaliated against him for insisting they comply with the terms in his (2002) Settlement Agreement, and 602-ing them when they have refused - resulting in further retaliatory acts.

A. Dr. Rowe's acts/failures to act.... evidence re: credibility, and retaliation:

1. The 602 Appeal referenced above [re: Report & Recomms, p.#3: 1-3] was initiated based on the complaints that Dr. Rowe, was cutting medications, directly violating terms in my settlement agreement, and was

2.

antagonistic and unprofessional. In response to this 602 Appeal Dr. Rowe Retaliated by the following:

2. On December 30, 2005, Dr. Rowe discontinued Tramadol [On Dec. 28, 2005, Dr. Rowe increased the Tylenol to (8) per day, in response to the 602 Appeal. Dr. Rowe did not say a word about stopping Tramadol. See: July 19, 2006, Decl. of Plt. filed in support of "motion for extension of time,... and protective order," at para.# 22] Tramadol was stopped in retaliation for the 602 Appeal.

3. Dr. Rowe ignored (2) of plaintiff's medical service requests, and had the R.N. state on the (3rd) one that all he had coming was Tylenol; thus, on Jan. 4, 2006, plaintiff submitted another 602 Appeal about Tramadol, which was granted on Jan. 9, 2006. Medical Staff [Dr. Rowe, based on info. and belief], re-ordered Tramadol for 90-days, and stated on the appeal that Dr. Sayre, would review the case [See: Plt's Decl., Filed Sept 29, 2006, at para# 23, and EXH. C, attached thereto; and Plt's Decl., Filed July 19, 2006, at para's # 23-24, and EXH. E, attached thereto]

4. The question is, if Dr. Rowe, did not believe plaintiff required Tramadol and that it is only for "post-op, acute pain", then why was it re-ordered Jan. 9, 2006, for 90-days [especially after plaintiff had recieved it since 2002] after Dr. Rowe, stopped it for (10) days in Dec./Jan 2006.

B. Dr. Sayre's acts/failures to act.... evidence re: credibility and retaliation:

1. Plaintiff points out several examples, demonstrating that Dr. Sayre's stated reasons for his decisions relating to the pain-management, arm care assistive aide issues, are contrary to those of ortho-specialists, nuerologist, gastrologist, and Dr. Weinstein [See: Plt's Reply Brief Decl, and EXH's attached; and Supplemental Evidence and EXH's, Filed Feb. 27, 2007]

2. In Dr. Sayre's Nov. 11, 2006, declaration, he states he has been employed by (PBSP) since (1-18-05), and is the Chief Medical Officer. He does not claim to have personally conducted a single physical exam of plaintiff [noteably, Dr. Weinstein's reviewed plaintiff's medical file on Jan. 22, 2007, and noted in his 1-28-07, report that he..."found no evidence of complete

3.

or careful physical examination of TA's right arm or hand in the chart done by his current providers involved in making recent decisions to stop his prior pain medications and accommodations for his disability" [Plt's Supp. Evid, Ex. A, Dr. Weinstein's Report, at p.#3]

3. IF Dr. Sayre, believed Tramadol was really harmful, and not required to help alleviate plaintiff's pain, why did he continue to approve it untill Sept. 2006 [Plt's. 9-29-06. Decl., para.#33-38]

4. Noteably, in response to the 602 Appeal of [10-10-05], challenging Dr. Rowe's actions; both Dr. Sayre, and Health Care Manager McLean, respond at the Second Level of Review on [4-10-06], stating that Plaintiff has a 'new primary care provider, who renewed the Tramadol... you "are being given adequate and appropriate care..." [Plt's Decl., para.#34-35] at Ex.#2, 602 Appeal]

5. Dr. Sayre, did not make an issue about plaintiff's Tramadol medication, until after plaintiff presented the 602 Appeal (referenced above) to Third Level Review, (persisting with his claim that (PBSP-CDC) has not complied with his 2002 Settlement Agreement).
The same day the Third Level Reviewer denied the appeal, Dr. Sayre, told FNP Risenhoover, to cut the Tramadol [Plt's 9-29-06 Decl., para#36-38, #Ex.2, and Reply Brief Decl., para#24, and Exh.B attached thereto]

6. Then, after several months of not having his medical chrono's renewed, nor a useable arm brace, plaintiff filed another 602 Appeal on Aug. 8, 2006. Dr. Sayre's response was to state plaintiff does not need anything for his arm, ordering all assistive aides be discontinued. [Reply Brief Decl., para#21-27]

7. Dr. Sayre's stated justification(s) for denying adequate pain medications, and all assistive aides, are completely in opposite to the determinations of several specialists, as well as Dr Weinstein, all of whom have personally reviewed the medical records, x-rays, and conducted

4.

physical examinations [Reply Brief Decl., para #37-52, and EXH.C; and Supp. Evid. at EXH. A-C]

Plaintiff hopes the court will consider the above evidence because it is difficult to fully articulate, when in constant pain and discomfort.

## II.
## ADDITIONAL EVIDENCE

Plaintiff seeks court permission to submit additional evidence to support his need for the protective order, concerning physical therapy issues, as the following things have occurred recently:

1. Early March of 2007, plaintiff's specialty-clinic, physical therapy was discontinued. His 602 Appeal challenging this additional Settlement Agreement is pending First Level Response [See accompanying Declaration]. This was done shortly after he filed his "supplemental evidence", on Feb. 27, 2007, which included statements about Dr. Sayre's false claims (Supp. Decl, 14-17)

2. April 5, 2007, [PBSP-SHU] Sgt. Rangel, confiscated plaintiff's in-cell, physical therapy aides [thera band and ball], without leaving a reciept, and instead verbally informing him that, "D-SHU, clinic R.N. Flowers stated they were not allowed per. Sayre's Aug. 31, 2006 order they be discontinued." [See accompanying Decl.]

Plaintiff's pain and discomfort have gotten progressively worse now, and he does not expect the return of the physical-therapy aides absent court order [Decl]

## III.
## Conclusion

Based on the above, as well as the accompanying declaration, and file and record in this case, plaintiff respectfully asks the court to please grant this motion and consider the above.

Dated: April 11, 2007                Respectfully Submitted I.L. Ashker

5.

$00.63
APR 17 2007
PITNEY BOWES
UNITED STATES POSTAGE
MAILED FROM ZIP CODE 95531
02 1M
0004217

U.S. MARSHALS SERVICE
INSPECTED BY
APR 2 3 2007

PELICAN BAY STATE PRISON
5905 Lake Earl Dr
Crescent City CA 95532

U.S. District Court
1301 Clay St., # 400 South
Oakland, Cal. 94612

Todd Ashker, C58191
Box # 7500/D1-119
Crescent City, Cal., 95532
4-11-07

— Confidential —
Legal-Mail

*[signature]*

— Confidential —
Legal-Mail

4/14/07

PELICAN BAY STATE PRISON
SECURITY HOUSING UNIT
UNIT D-1