IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD L. ASHKER,

       Plaintiff,

  v.

ROBERT HOREL, Warden, Pelican Bay State Prison (PBSP), JEANE WOODFORD, JOE MCGRATH, RICHARD KIRKLAND, P.T. SMITH, MARK CASTWELLAW, J. COX, M.J. NIMROD, A.K. THACKER, DWIGHT W. WINSLOW, DOCTOR WELTON, D. LANGLOIS, M.C. SAYRE, M. MCLEAN, LINDA ROWE, MS. DAVID, and SUE RISENHOOVER,

       Defendants.

                                              /

No. C 05-3759 CW

ORDER SCREENING PLAINTIFF'S AMENDED SUPPLEMENTAL COMPLAINT

      Plaintiff Todd Ashker, an inmate at Pelican Bay State Prison (PBSP), moves for leave to file a "First Amended Complaint" which he explains is a request to add a retaliation cause of action to his supplemental complaint. The Court construes this as a motion for leave to file a First Amended Supplemental Complaint (FASC). The Court screens this complaint pursuant to 28 U.S.C. § 1915A.[1]

---

[1] Title 28 U.S.C. § 1915A states, in relevant part:

    (a) Screening. -- The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity.

BACKGROUND

On October 5, 2006, Plaintiff filed a motion to file a supplemental complaint (Docket # 59), which Defendants opposed. On June 18, 2007, the Court granted Plaintiff leave to file his supplemental complaint. (Docket # 113). Defendants requested that the Court screen two of the claims in the supplemental complaint pursuant to 28 U.S.C. § 1915A. On August 14, 2007, the Court issued an Order Granting Defendants' Request to Screen Supplemental Complaint and found one of the two claims at issue to be cognizable. (Docket # 141).

On August 6, 2007, Plaintiff filed this motion to file an FASC. He wishes to add a First Amendment retaliation cause of action against four named Defendants: (1) Dr. Linda Rowe, doctor at PBSP; (2) Dr. Michael Sayre, medical chief officer at PBSP; (3) Maureen McLean, health care manager at PBSP; and (4) Sue Risenhoover, a family nurse practitioner at PBSP.

In his proposed FASC, Plaintiff alleges that in June, 2005, Dr. Rowe became his primary care provider at PBSP. Plaintiff saw her in response to his request for renewal of his prescriptions for Tylenol, Tramadol, and Mylanta Tablets. Dr. Rowe cut his Tylenol

---

> (b) Grounds for dismissal -- On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> > (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; . . .
>
> 28 U.S.C. § 1915A (a) and (b).

2

from twelve tablets[2] per day to six per day. On September 21, 2005, Plaintiff again saw Dr. Rowe for renewal of his prescriptions for medication. At this examination, Dr. Rowe was antagonistic and unprofessional with Plaintiff. She stated that Plaintiff did not need the Tylenol or Tramadol "for some little arm pain," and she "would cut it back" each time she saw him. Dr. Rowe cut Plaintiff's Tylenol to four tablets per day.

Plaintiff alleges that the four Tylenol tablets plus 100 milligrams of Tramadol were not relieving his pain. On October 10, 2005, Plaintiff filed a 602 Appeal complaining about Dr. Rowe's actions. He complained that she was incompetent, unprofessional and antagonistic and violated the terms of his 2002 Settlement Agreement. On December 28, 2005, Dr. Rowe interviewed Plaintiff about his 602 appeal. After this interview, Dr. Rowe increased Plaintiff's Tylenol to eight tablets per day. She did not mention the Tramadol.

On December 30, 2005, the medical technician assistant who was delivering medications informed Plaintiff that his Tramadol was stopped on an order from Dr. Rowe. On December 31, 2005, and January 1 and 2, 2006, Plaintiff sent medical requests stating he was in serious pain and needed to be seen by a doctor. Plaintiff received a message that Dr. Rowe would not see him. On January 4, 2006, Plaintiff filed another 602 appeal complaining that Dr. Rowe stopped his Tramadol and refused to see him.

---

[2] Plaintiff only alleges that the amount was reduced from "twelve" to "six" per day. The Court assumes Plaintiff means twelve tablets to six tablets per day.

3

1    On January 9, 2006, Plaintiff's appeal was granted and the
2 prescription for Tramadol was renewed on Dr. Friedman's
3 recommendation.  On January 25, 2006, Dr. Rowe submitted her
4 written response to Plaintiff's first appeal, stating that she had
5 cut his prescription for Tylenol out of concern for his liver and
6 that Tramadol is only for short-term use.  Plaintiff alleges that
7 Dr. Rowe discontinued his Tramadol on December 30, 2005 in
8 retaliation for his 602 appeal.  When Plaintiff proceeded with his
9 appeal, Dr. Rowe demanded that Dr. Sayre and Ms. McLean cut off the
10 Tramadol completely.
11   On February 6, 2006, Plaintiff was moved to a different
12 facility at PBSP and Ms. Risenhoover became Plaintiff's new primary
13 care provider.  On March 25, 2006, Plaintiff saw Ms. Risenhoover
14 for the first time and she cut his Tylenol from eight to four
15 tablets per day, which was inadequate to alleviate his pain.  On
16 April 10, 2006, Dr. Sayre and Ms. McLean "partially granted"
17 Plaintiff's 602 appeal at the second level of review, stating that
18 "you were seen by S. Risenhoover on 3/25/06 to renew your
19 medications.  She renewed your Tramadol . . . you have a new
20 primary care provider and are being given adequate care for your
21 medical condition."  On April 16, 2006, Plaintiff sent his 602
22 appeal to the third level of review.  On June 21, 2006, the 602
23 appeal was denied at the third level.  Also, on June 21, 2006, Ms.
24 Risenhoover informed Plaintiff that Dr. Sayre wanted her to cut off
25 his Tramadol, but she did not feel comfortable doing this because
26 Dr. Sayre had never examined him.  Ms. Risenhoover renewed
27 Plaintiff's Tramadol prescription for sixty days to give Dr. Sayre

4

1  time to examine Plaintiff.
2     On August 30, 2006, Plaintiff saw Dr. Sayre.  Plaintiff
3  alleges that this visit was a sham.  Dr. Sayre refused to renew
4  Plaintiff's "chronos" which were necessary for Plaintiff to have
5  the use of various physical therapy aids such as his theraband,
6  theraball and arm brace.  Furthermore, on September 27, 2006, Dr.
7  Sayre ordered that the Tramadol be completely cut off.  On March 1,
8  2007, Plaintiff's physical therapy sessions were discontinued.
9  Plaintiff alleges that these actions were in taken in retaliation
10 for his exercise of his First Amendment right to challenge the
11 conditions of his confinement by filing 602 appeals.

                              DISCUSSION
I. Legal Standard for First Amendment Claim

    A claim may be stated under 42 U.S.C § 1983 where a plaintiff
alleges retaliation for the exercise of his or her First Amendment
rights.  Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274,
283-84 (1976).  A plaintiff must establish both that the type of
activity he or she was engaged in was protected by the First
Amendment and that the protected conduct was a substantial or
motivating factor for the alleged retaliatory acts.  Id. at 285-87;
Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314- 16 (9th Cir.
1989) (inferring retaliatory motive from timing and nature of
suspensions).  A prisoner suing prison officials under § 1983 for
retaliation must further allege that the retaliatory action did not
advance legitimate penological goals, such as preserving
institutional order and discipline.  Barnett v. Centoni, 31 F.3d
813, 816 (9th Cir. 1994); see also Rizzo v. Dawson, 778 F.2d 527,

5

532 (9th Cir. 1985).

Prisoners may not be retaliated against for exercising their right of access to the courts. Franco v. Kelly, 854 F.2d 584, 589 (2nd Cir. 1988) (right to petition government for redress of grievances guaranteed by First and Fourteenth Amendments).  Nor may prison officials retaliate against a prisoner for using the prison grievance system, even where there may be no constitutionally protected right to such a system. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (inmate falsely charged with disciplinary violation after filing grievance).  The right to file a grievance is subsumed under the First Amendment right to petition the government for redress of grievances, Hines v. Gomez, 853 F. Supp. 329, 333 (N.D. Cal. 1994), and protects both the filing, id., and content, Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995), of prison grievances.

II. Analysis

Plaintiff alleges that Dr. Rowe discontinued his prescription for Tramadol because he filed a 602 appeal against her.  This is sufficient to state a cognizable First Amendment claim against Dr. Rowe.  Plaintiff alleges that Dr. Sayre refused to renew his "chronos" for physical therapy aids and also refused to renew his pain medication because he filed a 602 appeal challenging the conditions of his confinement.  This is sufficient to allege a cognizable First Amendment claim against Dr. Sayre.

However, the only allegation against Ms. McLean is that Dr. Rowe demanded that she cut off Plaintiff's Tramadol.  This is insufficient to state a retaliation claim against Ms. McLean.

6

The only allegation against Ms. Risenhoover is that she cut Plaintiff's Tylenol from eight to four tablets and that she refused Dr. Sayre's request to cut off Plaintiff's Tramadol until Dr. Sayre had time to examine him. Plaintiff does not allege that Ms. Risenhoover knew about his 602 appeals or that she cut his Tylenol in retaliation for doing so. Furthermore, Plaintiff alleges that Ms. Risenhoover acted for Plaintiff's benefit by refusing to follow Dr. Sayre's order to cut off Plaintiff's prescription for Tramadol. Therefore, Plaintiff has not plead a cognizable First Amendment retaliation claim against Ms. Risenhoover.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's FASC contains cognizable claims against Drs. Rowe and Sayre. Accordingly, the Court will entertain Plaintiff's motion to file those claims. Defendants shall respond to the motion within two weeks of the date of this Order. Plaintiff may reply one week thereafter. If Defendants do not oppose the filing of these new claims, the Court will order service of them.

IT IS SO ORDERED.

Dated: 8/24/07

CLAUDIA WILKEN
United States District Judge

7

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ASHKER,

        Plaintiff,

v.

ALAMEIDA ET AL et al,

        Defendant.

Case Number: CV05-03759 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 24, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brendan Kenny
J. Randall Andrada
Andrada & Associates
180 Grand Avenue
Suite 925
Oakland, CA 94612

Todd A. Ashker
#C58191
Pelican Bay State Prison
Box 7500
Crescent City, CA 95532

Dated: August 24, 2007

                                        Richard W. Wieking, Clerk
                                        By: Sheilah Cahill, Deputy Clerk