IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>TODD A. ASHKER,<br><br>     Plaintiff,<br><br>   v.<br><br>ROBERT HOREL, Warden, Pelican Bay<br>State Prison (PBSP), MATTHEW CATE,<br>Secretary of California Department of<br>Corrections and Rehabilitation<br>(CDCR), JOE MCGRATH, RICHARD<br>KIRKLAND, P.T. SMITH, MARK CASTELLAW,<br>J. COX, M.J. NIMROD, A.K. THACKER,<br>DWIGHT W. WINSLOW, DOCTOR WELTON, D.<br>LANGLOIS, M.C. SAYRE, M. MCLEAN,<br>LINDA ROWE, MS. DAVID, and SUE<br>RISENHOOVER,<br><br>     Defendants.<br>_____/</td><td>No. C 05-03759 CW<br><br>ORDER GRANTING<br>MOTION FOR SUMMARY<br>JUDGMENT IN PART AND<br>DENYING IT IN PART</td></tr>
</table>

Defendants move for summary judgment on all of the claims alleged in Plaintiff's supplemental complaint and first amended supplemental complaint (FASC).[1]  Plaintiff opposes the motion.  The motion was submitted on the papers.  Having considered all the papers filed by the parties, the Court DENIES Defendants' motion regarding the breach of contract claim, DENIES summary judgment as

---

[1] On May 16, 2008, Matthew Cate was appointed as Secretary of the California Department of Corrections and Rehabilitation (CDCR). The Clerk of the Court shall substitute Matthew Cate for Jeanne Woodford as director of the CDCR. See Rule 25(d)(1) of the Federal Rules of Civil Procedure (if a public officer who is a party to a lawsuit ceases to hold office or resigns, the officer's successor is automatically substituted as a party).

United States District Court
For the Northern District of California

to Dr. Michael Sayre on the Eighth Amendment, medical malpractice and negligence claims and GRANTS summary judgment in favor of all other Defendants on all other claims in the supplemental complaint and FASC.

PROCEDURAL BACKGROUND

On September 16, 2005, Plaintiff, an inmate at Pelican State Prison (PBSP) housed in the Security Housing Unit (SHU), filed his original complaint against twelve named Defendants.  The complaint primarily concerned the allegedly inadequate medical treatment Defendants provided to Plaintiff for his disabled arm and the fact that he has been placed in a single cell rather than double-celled with another inmate who could help him with writing and other activities of daily living.  Plaintiff's original complaint contained three federal civil rights claims and various state law claims.[2]

On June 26, 2006, Defendants, addressing the claims in the original complaint, filed a motion to dismiss or for summary judgment on Plaintiff's federal civil rights claims.  Defendants also moved to dismiss Plaintiff's state claims based on lack of jurisdiction in the event the Court dismissed or granted summary judgment to Defendants on Plaintiff's federal claims.

On June 18, 2007, the Court issued an Order Granting Plaintiff's Request for Leave to File a Supplemental Complaint against five new Defendants -- Dr. Michael Sayre, PBSP chief medical officer; Maureen McLean, family nurse practitioner and PBSP

United States District Court
For the Northern District of California

[2]Plaintiff moved to dismiss a cause of action for violation of the Americans with Disabilities Act.  On March 14, 2007, the Court granted the motion to dismiss.  (Docket # 84).

2

health care manager; Dr. Linda Rowe, PBSP doctor; Dr. Clarene David, former PBSP doctor; and Sue Risenhoover, certified family nurse practitioner -- alleging four causes of action arising from the new Defendants' improper treatment of Plaintiff's disabled arm: (1) violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by not providing him with pain management, physical therapy and medically necessary assistive aids; (2) negligence and medical malpractice; (3) breach of contract due to the failure of Defendants Alameida, Woodford, McLean and Dr. Sayre to comply with the 2002 settlement agreement in C 97-1109 CW regarding medical care for Plaintiff's injured arm; and (4) tortious interference with contract.  On August 14, 2007, the Court dismissed the fourth cause of action for tortious interference.

On September 28, 2007, the Court issued an Order Granting in Part and Denying in Part Motion to Dismiss and Granting Motion for Summary Judgment (Docket # 160) in which it granted Defendants' motion to dismiss or for summary judgment on Plaintiff's federal civil rights claims and denied Defendants' motion to dismiss Plaintiff's state claims without prejudice, because Plaintiff's supplemental complaint alleged a federal Eighth Amendment claim which provided the Court with supplemental jurisdiction over the state claims.

On August 6, 2007, Plaintiff filed Motion for Leave to File First Amended Complaint to add a First Amendment retaliation claim against Dr. Sayre, Dr. Rowe, Ms. McLean and Ms. Risenhoover.  On August 24, 2007, the Court issued an order screening this pleading (Docket # 147), construing it as a First Amended Supplemental

Complaint (FASC) and finding that Plaintiff stated a cognizable claim of retaliation against Drs. Rowe and Sayre but that the claim against Ms. McLean and Ms. Risenhoover was not cognizable.  On August 27, 2007, Drs. Rowe and Sayre filed a notice of non-opposition to Plaintiff's motion for leave to file the FASC. (Docket # 215).

Defendants now move for summary judgment on the Eighth Amendment, negligence, medical malpractice and breach of contract claims alleged in the supplemental complaint and the First Amendment retaliation claim alleged in the FASC.[3] [4]

FACTUAL BACKGROUND

Plaintiff has a permanently disabled right arm.  As a result of his discomfort and inability fully to use his right arm and hand without experiencing pain, Plaintiff states that he requires

_____

[3]In his opposition, Plaintiff indicates that his supplemental complaint includes a claim relating to the "systematic, unethical, illegal policys [sic] – practices of Defendant Sayre denying inmates (including Plaintiff) medical care, treatment, and access to outside specialists, in an effort to coerce (PBSP-SHU) inmates to debrief."  Plaintiff points to paragraph 51 of his supplemental complaint which includes this factual allegation.  However, the three causes of action listed in the supplemental complaint do not include a claim regarding Dr. Sayre's illegal policies.  Plaintiff argues that, because he is pro se, the Court should allow this claim to proceed.  However, Plaintiff may not add a new cause of action in an opposition to a motion for summary judgment. Therefore, any new claim against Dr. Sayre is dismissed.

[4]Defendants do not move for summary judgment on any of the state law claims alleged in Plaintiff's original complaint.  In footnote 1 of their motion, Defendants request that the claims against all Defendants, with the exception of the five new Defendants and Defendants Cate, Horel and Thacker, be dismissed because the supplemental complaint and the FASC do not allege claims against any Defendants other than these.  Because Defendants are not moving for summary judgment on the state claims alleged in the original complaint, those claims remain against Defendants Cate, McGrath, Kirkland, Smith, Castellaw, Cox, Nimrod, Thacker, Welton, and Winslow, except that the Court dismisses sua sponte the claim based on the California Penal Code.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

treatment that Defendants have failed to provide to him.

Plaintiff has filed several previous cases against PBSP medical practitioners and prison employees regarding the medical care he has received for his disabled right arm and wrist.  In C 97-01109 CW, Plaintiff asserted, <u>inter alia</u>, Eighth Amendment claims against prison officials based on inadequate medical care over a period of years for his right arm and wrist.  On May 24, 2002, the parties entered into the 2002 Settlement Agreement with respect to Plaintiff's medical claims and final judgment was entered in that case on September 11, 2002.  The 2002 Settlement Agreement provided that Defendants would pay Plaintiff $37,500 in full settlement of all claims and that they would provide him with physical therapy, continued and appropriate use of an arm brace, referral to a pain management examination and consultation at UC Davis Medical Clinic and implementation of the pain management regimen recommended by the UC Davis pain specialist.  The 2002 Settlement Agreement provided that this medical care would continue until Plaintiff's medical needs changed.

After the 2002 Settlement Agreement was signed, Defendants provided Plaintiff with physical therapy and an arm brace.  However, Plaintiff declares that he was never seen by a pain specialist at UC Davis Medical Center and Defendants do not dispute this fact.

In June, 2002, Plaintiff was prescribed Tramadol for the pain he experienced as a result of the injury to his right arm and wrist.  Until sometime in 2005, Plaintiff appeared to be satisfied with the medical treatment PBSP staff was providing him.  Between December, 2004 and March, 2005, Dr. Clarene David was Plaintiff's

United States District Court
For the Northern District of California

primary care physician.  She treated Plaintiff on three occasions.
On these visits she renewed Plaintiff's prescriptions for Tramadol
and Tylenol, and prescribed Mylanta for his stomach irritation.
Dr. David rejected Plaintiff's request for additional sets of
clothing so he would not have to wash his clothes after exercising,
because she felt his exercise program did not qualify as a medical
necessity justifying the need for more clothes.

Between June, 2005 and December 28, 2005, Dr. Linda Rowe was
Plaintiff's primary care physician.  On June 23, 2005, Dr. Rowe saw
Plaintiff and refilled his Tylenol prescription but decreased the
daily frequency prescribed.  She ordered viral tests regarding
Plaintiff's Hepatitis C status.  On September 21, 2005, Dr. Rowe
renewed Plaintiff's Tramadol prescription and decreased the Tylenol
from 650 mg three times a day to 650 mg twice a day because she was
concerned about the effects of these two medications on Plaintiff's
liver.

On December 28, 2005, Dr. Rowe saw Plaintiff a third time.
She discontinued his participation in the hepatitis clinic because
his liver function was normal, prescribed 650 mg of Tylenol every
six hours for pain, renewed the prescription for an elastic
resistance band for one year, and denied his request for daily
showers.  On December 30, 2005, she discontinued Plaintiff's
Tramadol prescription based on her stated opinion that Tramadol is
not indicated for chronic pain conditions such as Plaintiff's and
because of the possible side effects of Tramadol, including an
increased likelihood of seizure.

Between March 25, 2006 and September 20, 2006, Plaintiff was
treated by Sue Risenhoover on four occasions.  On March 26, 2006,

United States District Court
For the Northern District of California

Ms. Risenhoover decreased the Tylenol to 650 mg twice a day and, upon Plaintiff's request, reinstated the 100 mg per day Tramadol prescription.  On June 20, 2006, Ms. Risenhoover reviewed Plaintiff's Tramadol prescription with Dr. Sayre, who recommended that the Tramadol be tapered off.  On June 21, 2006, however, Ms. Risenhoover renewed the Tramadol for sixty days.  On August 21, 2006, she again renewed the Tramadol for thirty days and referred Plaintiff's case to the medical committee.

On August 21, 2006, the medical committee reviewed Plaintiff's long term use of Tramadol.  Ms. Risenhoover, Dr. Sayre, Dr. Rowe and Ms. McClean were present at the committee meeting.  The committee discussed Plaintiff's long term use of Tramadol and recommended that the Tramadol doses gradually be reduced and that non-steroidal anti-inflammatory drugs (NSAIDs) be used instead. Plaintiff declares that the NSAIDs cause him to experience severe stomach pains.

On August 30, 2006, Dr. Sayre examined Plaintiff and determined that Plaintiff no longer needed physical therapy or the therapeutic devices of the elastic resistance band and rubber ball because, in Dr. Sayre's opinion, the functioning of Plaintiff's arm and wrist had reached a plateau.  Dr. Sayre opined that Plaintiff did not suffer from a medical condition requiring thermal underwear, and that Plaintiff's claimed need for daily showers did not arise from the injured arm.  Dr. Sayre also concluded that Plaintiff did not need Tramadol because it is used for short term therapy, not a long term chronic condition such as Plaintiff's.  On September 20, 2006, Plaintiff's dosage of Tramadol was decreased from 100 mg twice a day to 50 mg twice a day.  On September 27,

7

**United States District Court**
For the Northern District of California

2006, the Tramadol was discontinued completely.

In regard to physical therapy, Dr. Sayre declares that, in February and March, 2007, Plaintiff refused to attend two physical therapy sessions. Plaintiff states he could not attend because he was ill. Dr. Sayre states that Plaintiff's physical therapy regimen was discontinued per PBSP regulations because Plaintiff missed two sessions, the physical therapist believed that Plaintiff no longer needed it, and the condition of his right arm had reached a plateau.

On June 7, 2007, Dr. Sayre examined Plaintiff's right hand and arm in regard to his need for an arm brace. Dr. Sayre concluded that, with the rehabilitation Plaintiff received, his arm and wrist no longer need the brace for stabilization. Dr. Sayre's examination revealed that Plaintiff's wrist has a reduced range of motion, but with active and passive motion to the limits of its mobility, Plaintiff did not show signs of pain or discomfort. Dr. Sayre opines, "All of these findings are very consistent with a well healed and end-stage injury that will not change, does not need further therapy, and most likely causes mild chronic pain with excessive use. In short, the typical painful body part associated with an old injury. For such conditions, low-level chronic anti-inflammatory medications are indicated such as ibuprofen and acetaminophen." Sayre Dec. ¶ 17.

Dr. Sayre also testifies that "the pain pattern Mr. Ashker complains of in his right arm is contradicted by the physical evidence. The ulnar nerve is extensively used for the function of flexion in the hand. He could not have a normal grip if this nerve were significantly impaired. He could not stabilize his wrist for

upper arm exercises with an elastic band.  He also could not use his arm in the manner required to obtain the well developed right biceps and triceps muscles he has."  Sayre Dec. ¶ 24.

Plaintiff presents evidence that contradicts Dr. Sayre's findings.  He submits the 1995 report of orthopedist Dr. Duncan who recommended an arm brace because Plaintiff's "forearm is vulnerable to any mild trauma as there was some muscle loss at the time of the injury and he has very poor soft tissue coverage over the ulna but again if he can be treated with the use of a splint this would be preferable to any consideration of surgery. . ."  A November 6, 1996 medical report indicates that the brace should be used indefinitely to protect Plaintiff's forearm.  Plaintiff also states that in March, 2006, the inner padding in the brace came loose. Because of this and the fact that his upper arm has grown due to the physical therapy exercises he is doing, the brace no longer fits.

Plaintiff also declares that his permanently damaged right arm and wrist cause him to experience chronic, serious pain on a daily basis.  Plaintiff submits the declaration of Dr. Cory Weinstein, who, on January 22, 2007, examined Plaintiff and concluded that, due to the severe nature of the injuries to Plaintiff's radial bone and to the soft tissue of his forearm, and to the fracture of his ulna, it would be unusual for him not to be in daily pain. Weinstein Dec. at 2.  Dr. Weinstein also states that Tramadol is used "routinely and with excellent efficacy in the management of chronic pain" and that the Ibuprofen, which Dr. Sayre now prescribes for Plaintiff, is known to cause stomach irritation and ulcers, and does cause Plaintiff to experience severe stomach pain.

9

1   Weinstein Dec. at 2.

2                              LEGAL STANDARD

3         Summary judgment is properly granted when no genuine and

4   disputed issues of material fact remain, and when, viewing the

5   evidence most favorably to the non-moving party, the movant is

6   clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

7   56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

8   Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

9   1987).

10        The moving party bears the burden of showing that there is no

11  material factual dispute.  Therefore, the court must regard as true

12  the opposing party's evidence, if it is supported by affidavits or

13  other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,

14  815 F.2d at 1289.  The court must draw all reasonable inferences in

15  favor of the party against whom summary judgment is sought.

16  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

17  587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

18  1551, 1558 (9th Cir. 1991).

19        Material facts which would preclude entry of summary judgment

20  are those which, under applicable substantive law, may affect the

21  outcome of the case.  The substantive law will identify which facts

22  are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

23  (1986).

24        Where the moving party does not bear the burden of proof on an

25  issue at trial, the moving party may discharge its burden of

26  production by either of two methods:

27        The moving party may produce evidence negating an
          essential element of the nonmoving party's case, or,
28        after suitable discovery, the moving party may show that

                                    10

United States District Court
For the Northern District of California

> the nonmoving party does not have enough evidence of an
> essential element of its claim or defense to carry its
> ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists."  Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation.  Nissan, 210 F.3d at 1105.  If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists.  Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition.  Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial.  Id. at 1107.

United States District Court
For the Northern District of California

EVIDENTIARY OBJECTIONS

Defendants object to some of the evidence submitted by Plaintiff.  The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence.  The Court will not discuss each objection individually.  To the extent that the Court has relied on evidence to which Defendants have objected, such evidence has been found admissible and the objections are overruled.

DISCUSSION

I. Eighth Amendment Claim Based on Deliberate Indifference
   to Serious Medical Needs

Plaintiff claims that Dr. Sayre, Dr. Rowe, Dr. David, Ms. McLean and Ms. Risenhoover violated his Eighth Amendment rights by being deliberately indifferent to his serious medical needs caused by his permanently disabled right arm and wrist.[5]

A. Legal Standard

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976); McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th

_____

[5]Plaintiff also names as Defendants Edward Alameida, Jr. and Jeanne Woodford, past directors of the CDCR, Dwight Winslow, former chief medical officer of PBSP, and Acel Thacker, PBSP Health Services Administrator.  Alameida and Woodford have been replaced as Defendants by Matthew Cate who is now director of CDCR.  The only allegation against the director of the CDCR and Thacker in Plaintiff's supplemental complaint is that they denied one or more of Plaintiff's 602 appeals.  This is an insufficient basis for an Eighth Amendment violation.  The only allegation against Winslow is that he decided not to comply with the terms of the 2002 Settlement Agreement.  Therefore, the Eighth Amendment claim is dismissed against these Defendants.

United States District Court
For the Northern District of California

Cir. 1997) (en banc).  A determination of "deliberate indifference"
involves an examination of two elements: the seriousness of the
prisoner's medical need and the nature of the defendant's response
to that need.  McGuckin, 974 F.2d at 1059.

A "serious" medical need exists if the failure to treat a
prisoner's condition could result in further significant injury or
the "unnecessary and wanton infliction of pain."  Id. (citing
Estelle, 429 U.S. at 104).  The existence of an injury that a
reasonable doctor or patient would find important and worthy of
comment or treatment; the presence of a medical condition that
significantly affects an individual's daily activities; or the
existence of chronic and substantial pain are examples of
indications that a prisoner has a "serious" need for medical
treatment.  Id. at 1059-60 (citing Wood v. Housewright, 900 F.2d
1332, 1337-41 (9th Cir. 1990)).

A prison official is deliberately indifferent if he knows that
a prisoner faces a substantial risk of serious harm and disregards
that risk by failing to take reasonable steps to abate it.  Farmer
v. Brennan, 511 U.S. 825, 837 (1994).  The prison official must not
only "be aware of facts from which the inference could be drawn
that a substantial risk of serious harm exists," but he "must also
draw the inference."  Id.  If a prison official should have been
aware of the risk, but was not, then the official has not violated
the Eighth Amendment, no matter how severe the risk.  Gibson v.
County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

In order for deliberate indifference to be established,
therefore, there must be a purposeful act or failure to act on the
part of the defendant and resulting harm.  McGuckin, 974 F.2d at

13

United States District Court
For the Northern District of California

1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  A finding that the defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however.

Once the prerequisites are met, it is up to the fact finder to determine whether deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison officials provide medical care.  McGuckin, 974 at 1062.

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).  However, the reliance by prison officials upon a second medical opinion which a reasonable person would likely determine to be inferior to one from a more qualified medical authority may amount to an Eighth Amendment violation.  Hamilton v. Endell, 981 F.2d 1062, 1066-67 (9th Cir. 1992).  In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health.  Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

B. Analysis

1. Serious Medical Need

Defendants dispute that Plaintiff's disabled arm and wrist constitutes a serious medical need.  Dr. Sayre testifies that, in

United States District Court
For the Northern District of California

his medical opinion, Plaintiff's arm is rehabilitated as much as it can be and is no longer in need of medical treatment.  He also testifies that he finds no medical basis for Plaintiff's claim that he experiences serious pain from the disabled arm and wrist. However, Plaintiff presents evidence in the form of his own testimony and that of Dr. Weinstein, indicating that Plaintiff continues to experience severe pain from the injury to his arm and wrist.  Dr. Weinstein opines that the injury suffered by Plaintiff is the type of injury that would cause severe pain for an extended period of time.  If Plaintiff's evidence is found to be true, his injury would constitute a serious medical need.

Because there is a dispute of material fact regarding whether Plaintiff's injury is a serious medical need, summary judgment on this issue must be DENIED.

### 2. Deliberate Indifference

#### a. Dr. David

The parties agree that Dr. David renewed Plaintiff's prescription for a thermal elastic resistance band for one year, twice she renewed his prescription for 100 mg of Tramadol a day and 350 mg of Tylenol every four to six hours, and she approved his request to use a modified pen.  Dr. David rejected Plaintiff's request to authorize additional sets of state-issued socks, t-shirts and boxer shorts for him.  Dr. David declares that she made this decision based on the fact that Plaintiff's daily general exercise program does not qualify as a medical necessity. Plaintiff declares that he told Dr. David that his cell was very hot and humid and he sweats easily and having clean clothes is important to prevent deadly disease.  Plaintiff states that he

15

**United States District Court**
For the Northern District of California

needs the extra clothes so that he will not have to hand-wash his clothes, which causes him serious pain.

Dr. David's medical treatment of Plaintiff does not qualify as deliberate indifference to his serious medical needs.  On the contrary, with the exception of ordering extra clothes for Plaintiff, she complied with all of his medical requests related to the treatment of his injured arm.  Plaintiff's need for extra clothes is not related to his injured arm and, therefore, does not concern treatment of a serious medical need.  Summary judgment is GRANTED in favor of Dr. David on the Eighth Amendment claim.

                          b. Dr. Rowe

Dr. Rowe renewed Plaintiff's Tylenol prescription twice, once reducing it to 650 mg three times a day and then reducing it to 650 mg twice a day because Plaintiff was in the chronic care program for Hepatitis C and she wanted to ensure that his Tylenol prescription did not compromise the functioning of his liver.

On October 10, 2005, Plaintiff filed a 602 appeal challenging Dr. Rowe's decision to decrease the Tylenol on the ground that the reduced amount was not adequate for his pain.  In response to Plaintiff's 602 appeal, Dr. Rowe treated him on December 28, 2005.  Dr. Rowe reviewed the result of Plaintiff's Hepatitis C test, which was negative.  She discontinued Plaintiff's participation in the chronic care clinic for his liver but ordered that his liver function be tested annually.  She informed Plaintiff of the potential for liver toxicity from high levels of Tylenol, but increased his prescription to 650 mg every four hours.  On December 30, 2005, Dr. Rowe discontinued Plaintiff's Tramadol prescription based on her opinion that it is not indicated for chronic pain

conditions such as Plaintiff's, and because of its possible side effects, including an increased likelihood of seizure.

On January 4, 2006, Plaintiff filed a 602 appeal challenging Dr. Rowe's decision to discontinue Tramadol. On January 9, 2006, Dr. Rowe renewed Plaintiff's Tramadol prescription. Plaintiff states that, as a result Dr. Rowe's discontinuance of Tramadol from December 30, 2005 to January 9, 2006, he suffered unnecessary severe physical and mental pain.

Plaintiff also states that, prior to September 20, 2006, Dr. Rowe and Dr. Sayre met with Ms. Risenhoover and Ms. McLean about Plaintiff's Tramadol prescription and that Dr. Rowe "emphatically" insisted that Plaintiff's Tramadol be discontinued.

Based on the foregoing, the only action taken by Dr. Rowe that could be considered deliberate indifference to Plaintiff's medical needs is her December 30, 2005 decision to discontinue his Tramadol prescription. However, it is undisputed that on January 9, 2006, just ten days later, Dr. Rowe renewed the prescription. This ten day discontinuance of Tramadol does not rise to the level of deliberate indifference to Plaintiff's serious medical needs. Summary judgment is GRANTED in favor of Dr. Rowe on the Eighth Amendment claim.

c. Ms. Risenhoover

As discussed above, Ms. Risenhoover treated Plaintiff on four occasions. The facts demonstrate that Ms. Risenhoover listened to Plaintiff's description of his ailments and his medical requests, adequately treated Plaintiff and, for the most part, complied with his requests. Therefore, Ms. Risenhoover did not act with deliberate indifference to Plaintiff's serious medical needs.

17

United States District Court
For the Northern District of California

Summary judgment is GRANTED in favor of Ms. Risenhoover on the Eighth Amendment claim.

d. Ms. McClean

The only action that Ms. McClean took in relation to Plaintiff was attending the August 21, 2006 medical committee review of Plaintiff's long-term use of Tramadol.  The medical committee, including Ms. McClean, recommended that the Tramadol doses be gradually decreased and be replaced by NSAIDs.

Ms. McClean's participation in the medical committee review does not constitute deliberate indifference to Plaintiff's serious medical needs.  Therefore, summary judgment is GRANTED in favor of Ms. McClean on the Eighth Amendment claim.

e. Dr. Sayre

Dr. Sayre declares that he examined Plaintiff on August 30, 2006.  Sayre Dec. at ¶ 7.  Based on this examination and his review of Plaintiff's medical records and the 2002 Settlement Agreement, Dr. Sayre determined that Plaintiff no longer needed therapy nor the Tramadol.

Plaintiff states that "Dr. Sayre's 'exam' . . . consisted of his lightly placing his fingertips in one spot on my radial bone, and having me open and close my hand.  That was it and it lasted less than (10) seconds."  Ashker Dec. ¶ 171.  Plaintiff was in restraints during the entire examination.  Ashker Dec. ¶ 200.

After being informed of Dr. Sayre's decisions to discontinue various treatments, Plaintiff filed 602 appeals.  Addressing the medications he has been provided, Plaintiff states that Voltaren causes him more stomach pain than Ibuprofin and that Elavil causes him to have blurred vision, facial twitching and lack of balance.

18

United States District Court
For the Northern District of California

Id.  Plaintiff now takes low doses of Ibuprofin/Tylenol, with Pepsid for the ensuing stomach pain, but he states that he has been in constant pain since the Tramadol was discontinued and his stomach problems have gotten progressively worse.  Ashker Dec. ¶¶ 197-98.

Dr. Weinstein examined Plaintiff on January 22, 2007 and found the range of motion in his right arm to be less than it was in 2005 and the numbness of the right fifth finger to be worse.  Weinstein Dec., Ex. A at 3, 4.  Dr. Weinstein found weakness in all the fingers of Plaintiff's right hand, a weak grip with the right hand, and weakness at the right wrist.  Weinstein Dec. at 3.  Dr. Weinstein states, "As with any other person with a profound local disability and secondary severe functional limitations a regular program of assistive, supportive and rehabilitative care is needed and ordinary."  Id. at 4.

Given that Dr. Sayre knows the history of Plaintiff's arm injury and disability, knows of Plaintiff's complaints of severe pain, knows of the adverse side effects caused by the medications he has prescribed for Plaintiff's pain in lieu of Tramadol, and knows of the 2002 Settlement Agreement that requires Plaintiff to see a pain consultant, the Court concludes that, if Plaintiff's version of events proves to be true, Dr. Sayre may be found to have been deliberately indifferent to Plaintiff's serious medical needs.

Therefore, Dr. Sayre's motion for summary judgment is DENIED on the Eighth Amendment claim.

C. Qualified Immunity

Because judgment has been entered in favor of all Defendants on the Eighth Amendment claim, with the exception of Dr. Sayre, the

19

Court need address only whether qualified immunity shields Dr. Sayre from suit on this claim.

1. Legal Standard.

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects those defendants who have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier v. Katz, 533 U.S. 194, 202 (2001). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir. 1991). A court considering a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right, then proceed to determine if the right was "clearly established." Wilson v. Layne, 526 U.S. 603 (1999); Conn v. Gabbert, 526 U.S. 286, 290 (1999).

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate. Id.

If the law is determined to be clearly established, the next

**United States District Court**
For the Northern District of California

question is whether, under that law, a reasonable official could have believed his conduct was lawful.  Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72 (9th Cir. 1993).  The defendant bears the burden of establishing that his actions were reasonable, even if he violated the plaintiff's constitutional rights.  Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).  Whether a reasonable official could have believed the action taken was lawful is a mixed question of law and fact: "It involves an objective test of whether a reasonable official could have believed that his conduct was lawful in light of what he knew and the action he took."  Sinaloa Lake Owners Ass'n v. City of Simi Valley, 70 F.3d 1095, 1099 (9th Cir. 1995)

### 2. Analysis

Defendants do not argue that the law on an Eighth Amendment violation for deliberate indifference for serious medical needs is not clearly established.  Instead, they argue that "it would not be clear to a reasonable prison health care provider that the plaintiff should be prescribed Tramadol permanently and that he required physical therapy sessions, a well-fitting arm brace, 'physical therapy aid,' thermal underwear, and daily showers."  Reply at 17.

The Court has found a dispute of material fact as to whether Dr. Sayre was deliberately indifferent to Plaintiff's serious medical needs.  If the fact-finder finds that he was, he will not be entitled to qualified immunity because no reasonable medical provider could believe that such deliberate indifference was lawful.  That is, because liability in the first instance requires a finding of deliberateness, the factual question on the qualified

immunity issue merges with that in the liability issue.  Dr. Sayre
is not entitled to qualified immunity on summary judgment.

## II. Negligence and Medical Malpractice

In the supplemental complaint, Plaintiff brings claims for
negligence and medical malpractice against the same Defendants
named in his Eighth Amendment claim.

In California, the prima facie elements of negligence are
"(a) a legal duty to use due care; (b) a breach of such legal duty;
(c) the breach as the proximate or legal cause of the resulting
injury."  B.E. Witkin, Summary of California Law, Torts,
§ 732 (9th ed. 1988); see also Means v. Southern Calif. Ry. Co.,
144 Cal. 473, 478 (1904).  The prima facie elements of a medical
malpractice claim are "(1) the duty of a professional to use such
skill, prudence, and diligence as other members of his profession
commonly possess and exercise; (2) a breach of that duty; (3) a
proximate causal connection between the negligent conduct and the
resulting injury; and (4) actual loss or damage resulting from the
professional's negligence."  Barragan v. Lopez, 156 Cal. App. 4th
997, 1004 (2007).

For the reasons discussed above, Plaintiff fails to support a
claim for negligence or medical malpractice against those
Defendants to whom summary judgment was granted on the Eighth
Amendment claim.  Therefore summary judgment on negligence and
medical malpractice is GRANTED in favor of all Defendants except
Dr. Sayre.

Plaintiff has raised an issue of material fact on his claim
against Dr. Sayre for negligence and medical malpractice.  The
evidence discussed above is also sufficient to raise a question of

United States District Court
For the Northern District of California

material fact whether Dr. Sayre breached his professional duty.

Plaintiff states that he suffered physically and emotionally as a result of Dr. Sayre's actions.  This provides sufficient evidence of the third and fourth elements of medical malpractice and negligence.

Therefore, summary judgment on the medical malpractice and negligence claims is DENIED as to Dr. Sayre.

III. First Amendment Retaliation Claim

In the FASC, Plaintiff alleges that Drs. Sayre and Rowe violated his First Amendment rights by retaliating against him for filing 602 appeals which challenged their decisions.

A. Legal Standard

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

A prisoner must at least allege that he suffered harm, because harm that is more than minimal will almost always have a chilling effect.  Id. at 567-68 n.11.  The prisoner need not demonstrate a total chilling of his First Amendment rights in order to establish a retaliation claim.  Id. at 568-69.  That a prisoner's First Amendment rights were chilled, though not necessarily silenced, is enough.  Id. at 569.

The prisoner must show that the type of activity he was

United States District Court
For the Northern District of California

engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest.  <u>Hines v. Gomez</u>, 108 F.3d 265, 267-68 (9th Cir. 1997).  Retaliatory motive may be shown by the timing of the allegedly retaliatory act and inconsistency with previous actions, as well as direct evidence.  <u>Bruce v. Ylst</u>, 351 F.3d 1283, 1288-89 (9th Cir. 2003).

B. Analysis

1. Dr. Rowe

Plaintiff argues that Dr. Rowe cut off his Tramadol from December 30, 2005 to January 9, 2006 as a retaliatory response to his October 10, 2005, 602 appeal in which he alleged she was incompetent, unprofessional and antagonistic.  Although retaliatory motive may be inferred from the timing of the allegedly retaliatory act, here the inference does not arise.  Plaintiff has filed numerous 602 appeals, and, with the exception of the treatment for his injured arm and wrist, he has no complaints about the medical care Dr. Rowe provided him.  Furthermore, from the fact that Plaintiff continued to file 602 appeals, it appears that her actions did not have a chilling effect on his speech.

Based on this evidence, Plaintiff has not met his burden of proving retaliatory conduct on the part of Dr. Rowe.  Therefore, summary judgment on this claim is GRANTED in favor of Dr. Rowe.

2. Dr. Sayre

Plaintiff claims Dr. Sayre's decision to discontinue the Tramadol and all treatment for Plaintiff's arm was motivated by retaliation for Plaintiff's filing, on October 10, 2005, January 4,

2006, and September 12, 2006, 602 appeals regarding his medical treatment.  Plaintiff fails to meet his burden of proving that Dr. Sayre was motivated by retaliation.

Plaintiff points to the fact that Dr. Sayre decided to discontinue Plaintiff's prescription for Tramadol at the August 21, 2006 medical committee meeting because it was before he examined Plaintiff on August 30, 2006.  However, the allegation that Dr. Sayre made his decision before he examined Plaintiff does not raise an inference of retaliation.  Dr. Sayre's decision on August 30, 2006 was not close enough in time to Plaintiff's October 10, 2005 and January 4, 2006 appeals to raise an inference of retaliation. Furthermore, Plaintiff's September 12, 2006 appeal was filed after the date Dr. Sayre made his decision; therefore, it could not have motivated Dr. Sayre to  retaliate against Plaintiff on August 21, 2006.  Finally, Plaintiff continued to file 602 appeals after Dr. Sayre's alleged retaliatory actions, belying an inference that his First Amendment rights were chilled by Dr. Sayre's actions.

Thus, summary judgment is GRANTED in favor of Dr. Sayre on the First Amendment claim.

IV. Breach of Contract

Defendants argue that Plaintiff's state law breach of contract claim fails for two reasons: it is barred by collateral estoppel, and Defendants have complied with the terms of the 2002 Settlement Agreement.

A. Collateral Estoppel

"Collateral estoppel precludes a plaintiff from relitigating identical issues by merely switching adversaries and precludes a plaintiff from asserting a claim that the plaintiff had previously

litigated and lost against another defendant." <u>A.B. Dick Co. v.</u> <u>Burroughs Corp.</u>, 713 F.2d 700, 702 (Fed. Cir. 1983) (quotations omitted) (citing <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 329 (1979)).  Under the law of the Ninth Circuit,

> collateral estoppel applies only where it is established that (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.

<u>Hydranautics v. FilmTec Corp.</u>, 204 F.3d 880, 885 (9th Cir. 2000).

Defendants claim that an October 19, 2004 order in C 97-1109 CW held that, from May 24, 2002 until the date of the order, the defendants in that case had complied with the terms of the 2002 Settlement Agreement.  Therefore, they argue that the doctrine of collateral estoppel bars relitigation of whether the 2002 Settlement Agreement was breached.  However, the October 19, 2004 Order cited by Defendants addressed Plaintiff's contention that the 2002 Settlement Agreement required the defendants in that case to provide him with a writing assistant. October 19, 2004 Order at 2.  The Court concluded that it did not.  October 19, 2004 Order at 4.  However, the October 19, 2004 Order did not address any of the claims at issue in this case.  Because the issue addressed in the October 19, 2004 Order was not identical to the ones sought to be litigated here, the doctrine of collateral estoppel does not bar Plaintiff's claim for breach of contract.

B. Contract Performance

To prevail on a breach of contract claim, a plaintiff must establish four elements: "(1) the existence of a valid contract;

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

(2) the plaintiff's performance or excuse for nonperformance;
(3) the defendant's unjustified or unexcused failure to perform;
and (4) damage to the plaintiff." <u>Lincoln Nat'l Corp. v.</u>
<u>TakeCare, Inc.</u>, 1998 WL 281290, *3 (N.D. Cal.); <u>see also</u> <u>First</u>
<u>Commercial Mortgage Co v. Reece</u>, 89 Cal. App. 4th 731, 745
(2001).

Here, the only issue in dispute is whether Defendants have
failed to perform under the 2002 Settlement Agreement.
Defendants argue that they have performed.  They claim that
Plaintiff's medical needs have changed such that physical
therapy, an arm brace, pain medication and other therapeutic
treatments are no longer needed.  They point out that the 2002
Settlement Agreement provides that Plaintiff was to receive the
specified medical treatment only until his medical needs changed
and they submit declarations from Dr. Sayre, Dr. Rowe and Ms.
Risenhoover attesting this is the case.

However, Defendants do not contend that they ever referred
Plaintiff to a pain management specialist at UC Davis Clinic for
an examination and consultation as is required by ¶ 4.2 of the
2002 Settlement Agreement.  Nor do Defendants claim that they
have complied with the second requirement of § 4.2, to implement
"the pain management regimen recommended by the specialist."

Plaintiff brings the breach of contract claim against Mr.
Alameida, Ms. Woodford, Ms. McLean and Dr. Sayre.  Former CDCR
directors Mr. Alameida and Ms. Woodford have been replaced by
the current CDCR director Mr. Cate.  Therefore, summary judgment
on this claim is DENIED as to Mr. Cate, Ms. McLean and Dr.
Sayre.

United States District Court
For the Northern District of California

V. State Law Claims in Original Complaint

In his original complaint Plaintiff alleged the following state law claims: (1) violation of California Penal Code § 2652 (prohibits cruel, corporal or unusual punishment of prisoners, or treatment that would injure or impair the health of a prisoner) against Alameida and Woodford (now replaced by Cate), McGrath, Kirkland, Smith, Castellaw and Cox; (2) negligence against Cate, McGrath, Kirkland, Smith, Castellaw and Cox for failing to provide Plaintiff with medically required assistive aids; (3) negligence, intentional tort conspiracy against Castellaw, Cox, Kirkland and Cate for housing Plaintiff in a single cell; (4) negligence, conspiracy, and medical malpractice against Nimrod, Thacker and Welton for denying Plaintiff assistive aids; and (5) negligence and breach of contract against Winslow and Thacker for failing to provide Plaintiff medically necessary extra thick thermal underwear.

The claim based upon violation of the penal code is dismissed for lack of standing. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) (private citizens lack a judicially cognizable interest in the prosecution of another). All the other state claims are pending.

CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment on Plaintiff's breach of contract claim against Mr. Cate, Ms. McLean and Dr. Sayre and DENIES summary judgment as to Dr. Sayre on the Eighth Amendment, negligence and medical malpractice claims. Summary judgment is granted in favor of all other Defendants on the Eighth

Amendment, negligence, medical malpractice and First Amendment

retaliation claims stated in the supplemental complaint and the

FASC.  (Docket # 150).  The state law claims alleged in the

original complaint remain against some defendants as stated

above.


        IT IS SO ORDERED.


Dated:  8/25/08

_____
CLAUDIA WILKEN
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ASHKER,

        Plaintiff,

  v.

ALAMEIDA ET AL et al,

        Defendant.
_____/

Case Number: CV05-03759 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on August 25, 2008, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Brendan Maguire Kenny
Office of the Attorney General
Correctional Law Section
455 Golden Gate Avenue
Suite #11000
San Francisco,  CA 94102

J. Randall Andrada
Andrada & Associates
Professional Corporation
180 Grand Avenue
Suite 225
Oakland,  CA 94612

Todd A. Ashker
#C58191
Pelican Bay State Prison
Box 7500
Crescent City,  CA 95532

Dated: August 25, 2008

        Richard W. Wieking, Clerk
        By: Sheilah Cahill, Deputy Clerk

United States District Court
For the Northern District of California