IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TODD L. ASHKER,

    Plaintiff,

  v.

MICHAEL C. SAYRE, et al.,

    Defendants.
_____/

No. C 05-03759 CW

ORDER FOR SPECIFIC PERFORMANCE

    The trial in this case took place from May 11 through May 15, 2009. One of the issues tried was whether Matthew Cate, in his official capacity as the Director of the California Department of Corrections and Rehabilitation (CDCR), breached the 2002 Settlement Agreement that Plaintiff and the CDCR entered into to settle a 1997 lawsuit, case number C 97-1109 CW, that Plaintiff had filed against the CDCR for, among other things, deliberate indifference to his serious medical need: his injured right arm and wrist.

    On June 1, 2009, the Court granted Plaintiff's request to brief the issue of specific performance in regard to his claim for breach of the 2002 Settlement Agreement. Plaintiff and Defendant

Cate have submitted briefs on this issue.[1]

BACKGROUND

In exchange for Plaintiff's release of the CDCR from his medical claims in case number C 97-1109 CW, the CDCR agreed to the following:

> 1. The Releasees (CDCR) agree to allow Releasor (Plaintiff) appropriate use of his arm brace. Releasor shall have appropriate use of the arm brace until his medical needs require otherwise.
>
> 2. The Releasees further agree to refer Releasor to a pain management specialist at UC Davis clinic for a pain management examination and consultation. The Releasees further agree to implement the pain management regimen recommended by the specialist, and to continue doing the pain management regimen until Releasor's medical needs change.
>
> 3. The Releasees agree to reinstate Releasor's receipt of the physical therapy he was previously receiving to rehabilitate his arm. The physical therapy shall continue until a change in Releasor's medical needs contraindicate the therapy.

2002 Settlement Agreement, ¶ 4.

Plaintiff testified that, at the time he entered into the 2002 Settlement Agreement, he intended to agree to resolve his medical claims against the CDCR in exchange for a referral by the CDCR to a neutral, third-party pain management specialist for an examination, a consultation, and a recommendation of a pain management regimen. Plaintiff also intended that the CDCR would follow the recommended regimen until his medical needs changed such that the regimen was no longer necessary. Plaintiff testified that he agreed to UC Davis medical clinic as a reputable, neutral third party specialist. The CDCR did not put on any witnesses to testify to

---

[1] Defendant objects to many of the statements in Plaintiff's declaration. The Court has reviewed these evidentiary objections and has not relied on any inadmissible evidence.

2

the intent of the CDCR at the time it entered into the 2002 Settlement Agreement. Therefore, there is no dispute of extrinsic evidence regarding the intent of the contracting parties at the time the 2002 Settlement Agreement was signed.

The evidence adduced at trial established that the CDCR had twice sent a written referral for Plaintiff to be seen by a pain management specialist at the UC Davis clinic. The referral was not accepted either time. UC Davis clinic doctor Paul Kreis testified that the clinic denied the referral because it was too busy to accept new patients. Without consulting Plaintiff about changing his referral to a different medical clinic, the CDCR referred Plaintiff to a clinic in Manteca. Plaintiff refused to go to the clinic in Manteca. The CDCR failed to put on any evidence regarding the kind or quality of medical care provided by the Manteca medical clinic, or its independence from the CDCR.

The evidence also established that the CDCR had not provided Plaintiff with a properly fitting arm brace and that it had discontinued Plaintiff's physical therapy while it was still beneficial to him.

I. Contract Interpretation

A. Legal Standard

A contract must be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civ. Code § 1636. When interpreting a contract, the whole of a contract is to be taken together, so as to give effect to every part, each clause helping to interpret the other. Cal. Civ. Code § 1641. A contract may be explained by reference to the circumstances under which it was made, and the matter to which it

3

relates. Cal. Civ. Code § 1647. Particular clauses of a contract are subordinate to its general intent. Cal. Civ. Code § 1650.

"It is solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." Parsons v. Bristol Dev. Co., 62 Cal. 2d 861, 865 (1965); De Guere v. Universal City Studios, Inc., 56 Cal. App. 4th 482, 501 (1997). The interpretation of a contract involves a two-step process. Wolf v. Superior Court, 114 Cal. App. 4th 1343, 1351 (2004). First, the court provisionally receives all credible evidence concerning the parties' intentions to determine if there is an ambiguity. Id.; Pacific Gas & Elec. Co. v. G.W. Drayage & Rigging Co., Inc., 69 Cal. 2d 33, 39-40 (1968). If, in light of the extrinsic evidence, the court determines the language of the contract is ambiguous, the extrinsic evidence is admitted to aid in the second-step: interpreting the contract. Id. The trial court's determination of whether there is an ambiguity is a question of law. Wolf, 114 Cal. App. 4th at 1351. Likewise, the trial court's resolution of an ambiguity is a question of law if no parol evidence is admitted or the parol evidence is not in conflict. Id. If the parol evidence is in conflict, the trial court's interpretation is a question of fact. Id. When two equally plausible interpretations of the language of the contract may be made and the extrinsic evidence is contradictory, a question of fact exists which must be resolved by a jury. Id.; see also City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008) (interpretation of a contract is a judicial function when it is based on the words of the instrument alone or when the extrinsic evidence is not in conflict).

4

B. Analysis

The parties disputed the meaning of the term, "refer," in the first sentence of ¶ 4.2 of the 2002 Settlement Agreement, which reads, "The Releasees further agree to refer Releasor to a pain management specialist at UC Davis clinic for a pain management examination and consultation." The parties also disputed the meaning of the term, "contraindicate," in the second sentence of ¶ 4.3 of the Settlement Agreement, which reads, "The physical therapy shall continue until a change in Releasor's medical needs contraindicate the therapy."

The Court considered all proffered evidence regarding the interpretation of these two terms. It concluded that the term "refer" is ambiguous. It could mean, as urged by Plaintiff, that the CDCR was required to ensure that Plaintiff would be examined by a pain management specialist, or, as urged by the CDCR, that the CDCR was required only to send a request to UC Davis for an appointment for Plaintiff. Thus, the Court admitted all proffered extrinsic evidence on the meaning of the word, "refer."

The only such evidence submitted was Plaintiff's testimony regarding his intent at the time he signed the Settlement Agreement. The CDCR did not put on evidence regarding its intent at the time the contract was signed. Because there is no contradictory extrinsic evidence, the Court interprets the term, "refer," as a matter of law. By using the term, "refer," the parties intended that the CDCR would arrange for an examination and consultation with a neutral, third-party pain specialist at the UC Davis clinic, who would then recommend a pain management regimen for Plaintiff which the CDCR would follow, as described in the next

sentence of that paragraph. Thus, the word "refer" meant an efficacious referral; if it meant otherwise, the second sentence in the paragraph, which requires the CDCR to implement the recommended pain management regimen until Plaintiff's medical needs changed, would have no meaning or effect.

Furthermore, if the CDCR had used its best efforts to obtain a consultation for Plaintiff, had failed and discontinued its efforts, it would, in effect, be asserting the defense of impossibility. Performance of a contract is excused where it is prevented or rendered impossible by the conduct of the opposite party. Taylor v. Sapritch, 38 Cal. App. 2d 478, 481 (1940). However, where a party enters into a contract that cannot be performed without the cooperation of a third person, performance is not excused by the promising party's inability to secure the cooperation of the third person; this is subjective impossibility that does not excuse non-performance of a contract. Ocean Air Tradeways, Inc. v. Arkay Realty Corp., 480 F. 2d 1112, 1117 (9th Cir. 1973) (applying California law). Therefore, any defense that the contract was impossible to perform because of the conduct of UC Davis medical clinic fails.

With regard to the disputed term, "contraindicate," the Court concludes that it is not ambiguous and that it means what the dictionary says it means: to indicate against the advisability of a particular remedy or treatment. See Webster's Third New International Dictionary 495 (1993). The medical testimony at the trial was in accord. The phrase containing the word "contraindicate" cannot mean, as urged by the CDCR, "Plaintiff no longer has a medical necessity for physical therapy." The parties

6

used three different formulations in the Settlement Agreement to address future changes: "use of the arm brace until his medical needs require otherwise," (¶ 4.1) continue the pain management regimen "until Releasor's medical needs change," (¶ 4.2) and the "contraindicate" language in ¶ 4.3. These different formulations must be construed to express different meanings, and contraindicate must be construed to connote more than simply that the physical therapy is no longer needed. Accordingly, the sentence, "The physical therapy shall continue until a change in Releasor's medical needs contraindicate the therapy," means that the CDCR will continue the physical therapy that Plaintiff was receiving as of the date of the Settlement Agreement unless that therapy became inadvisable or no longer beneficial to Plaintiff. The CDCR complains that this is burdensome and unreasonable; however, the CDCR agreed to the settlement.

II. Judgment as a Matter of Law on Breach of Contract

Under Federal Rule of Civil Procedure 50(a), the district court may grant judgment as a matter of law at any time before the case is submitted to the jury if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue . . ." Fed. R. Civ. Proc. 50(a).

Given the interpretation of the contract, as discussed above, at the close of all evidence, the Court concluded that no evidence had been presented that would allow a reasonable jury to find for Defendant Cate on the breach of contract claim.

The Court found that the CDCR breached the 2002 Settlement Agreement by failing to make sufficient efforts to arrange for an examination and consultation with a pain management specialist at

7

the UC Davis clinic. Because it did not arrange the examination, it also did not fulfill its obligation to follow a regimen recommended by a specialist. The CDCR also breached the contract by failing to provide Plaintiff with an appropriate arm brace, in that it was undisputed that the arm brace Plaintiff had did not fit properly and could not be used. Because the physical therapist had ordered exercises with a therapeutic ball and band as part of Plaintiff's therapy, and because there was no evidence that these exercises were contraindicated, the CDCR breached the Settlement Agreement by discontinuing the orders that allowed Plaintiff to exercise with the therapeutic ball and band. Finally, the CDCR breached the Settlement Agreement by discontinuing Plaintiff's regular visits to the physical therapist and concomitant use of the therapeutic hot whirlpool treatments because there was no evidence that these treatments were contraindicated.

III. Specific Performance

Plaintiff seeks specific performance of the 2002 Settlement Agreement.[2] Specific performance of a contract may be decreed whenever: (1) its terms are sufficiently definite; (2) consideration is adequate; (3) there is substantial similarity of the requested performance to the contractual terms; (4) there is mutuality of remedies; and (5) the plaintiff's legal remedy is inadequate. <u>Blackburn v. Charnley</u>, 117 Cal. App. 4th 758, 766

---

[2] Plaintiff also asks the Court to order the CDCR to provide him with thermal underwear, a typewriter and daily showers. These provisions were not included in the 2002 Settlement Agreement. At issue is the 2002 Settlement Agreement--whether it was breached and, if so, the appropriate remedy for that breach. Thus, any items not included in the 2002 Settlement Agreement are beyond the scope of this order.

8

(2004).

In this case, the terms of the 2002 Settlement Agreement are sufficiently definite; the consideration, that Plaintiff release the CDCR from liability for the claims in case number C 97-1107 CW, is adequate; there is substantial similarity of the requested performance to the contractual terms; there is a mutuality of remedies; and Plaintiff's legal remedy is inadequate in that money damages are not adequate to compensate Plaintiff for further degeneration of his arm and his future pain and suffering caused by the CDCR's failure to perform its obligations under the 2002 Settlement Agreement.

Citing Mycogen Corp. v. Monsanto Co., 28 Cal. 4th 888, 905 (2002), the CDCR argues that Plaintiff is not entitled to specific performance because he sought money damages for the breach of the 2002 Settlement Agreement, and the jury found that he had not been harmed by the breach and, thus, awarded no damages. Therefore, he is not entitled to "a second bite of the apple." For breach of contract, a plaintiff can choose the remedy of specific performance or monetary damages. Union Oil Co. of Cal. v. Greka Energy Corp., 165 Cal. App. 4th 129, 135 (2008). In Mycogen, the court held that a party may not obtain both specific performance and damages for the same breach of contract because it would constitute a double recovery. Id. However, the court distinguished the situation in which a plaintiff may recover both specific performance and damages for delay in the commencement of the defendant's performance. Id. at 906. Furthermore, a plaintiff does not have to suffer monetary damages in order to have a right to specific performance. Union Oil, 165 Cal. App. 4th at 135.

9

Here, after the close of evidence, the Court informed the jury that it had found that the 2002 Agreement had been breached as a matter of law and that it would order the CDCR to follow the terms of the agreement. The Court instructed the jury that it could award damages to Plaintiff for the past pain and suffering caused by the CDCR's failure to perform the 2002 Settlement Agreement from 2002 to the present. The jury did not do so. However, the jury could not have awarded future damages because it was instructed that the CDCR would be required to perform the terms of the contract.

The CDCR argues that Plaintiff cannot obtain specific performance because he has served notice of his intention to move for a new trial on damages. Because that motion has not been filed, this argument is unpersuasive.

Citing <u>Barndt v. County of Los Angeles</u>, 211 Cal. App. 3d 397, 403-04 (1989), the CDCR argues that Plaintiff cannot obtain specific performance because this remedy is not available to procure personal services or the act of a third person. Plaintiff's request for physical therapy is for a personal service and his request for a pain consultation requires procuring the act of a third person. <u>Barndt</u> is not applicable here. In <u>Barndt</u>, the issue was the breach of a settlement agreement regarding the plaintiff's appointment as a doctor in the cardiology section of a hospital. <u>Id.</u> at 400-01. In applying the rule against specific performance of personal service contracts, the court explained that this rule evolved for several reasons: the difficulty for courts to judge the quality of the work performed; the avoidance of friction and social costs that often result when employer and employee are

10

reunited in a relationship that has previously failed; and the avoidance of a situation that might involve involuntary servitude. Id. at 403-04. None of these reasons applies here. Plaintiff is not seeking the enforcement of an employment contract. Rather, the 2002 Settlement Agreement was entered into to settle disputes regarding the inadequate medical care the CDCR was providing to Plaintiff for the treatment of his serious medical needs. As discussed below, the Court need not judge the quality of the treatment Plaintiff receives; that will be accomplished by the pain consultant and Plaintiff's doctor. Involuntary servitude is not an issue; the Settlement Agreement does not require that any particular person perform services. It requires that the CDCR procure and pay for certain medical care for Plaintiff.

In sum, all of Defendant's arguments against specific performance fail.

Therefore, the Court orders the following: (1) Within one week from the date of this order, the CDCR shall begin the process of obtaining for Plaintiff a custom-made[3] properly-fitting arm brace. (2) Within one month from the date of this order, the CDCR shall provide Plaintiff with the properly fitting arm brace. Plaintiff shall be allowed to use this brace until such time as a qualified health care provider not employed by the CDCR certifies to the Court in writing that his medical needs require otherwise. If the brace becomes worn or damaged or no longer fits, it shall be promptly replaced by a new custom-made brace. (3) Within one week from the date of this order, the CDCR shall reinstate Plaintiff's

---

[3]Defendant's expert testified that an arm brace for Plaintiff would have to be custom-made.

physical therapy two times per week, consisting of the whirlpool treatments he was receiving as of May 24, 2002, the date of the Settlement Agreement. That therapy shall continue until Plaintiff's medical needs contraindicate the therapy, that is, until a physical therapist not employed by the CDCR certifies in writing to the Court that the therapy is no longer beneficial to Plaintiff. Plaintiff shall also be allowed to exercise with the theraband and theraball in his cell, and this equipment shall be replaced as necessary. (4) Within one week from the date of this order, the CDCR shall refer Plaintiff to a pain management specialist at the UC Davis clinic, and use its best efforts[4] to ensure that Plaintiff is accepted for a consultation at the clinic. (5) If, within three months from the date of this order, despite the CDCR's best efforts, the UC Davis clinic does not accept Plaintiff for a consultation, the CDCR shall use its best efforts to refer Plaintiff to a pain management specialist at the

---

[4] For example, the CDCR should inform the UC Davis doctors and legal department of the following circumstances of the case: A UC Davis clinic consultation was offered by the state as part of a settlement for a prior lawsuit alleging deliberate indifference to serious medical needs and the state is thus obliged to provide it. Plaintiff was initially injured in a shooting by a prison guard that a prior jury found amounted to a civil rights violation. The medical care he received from a prison doctor after the shooting was found by the same jury to constitute medical malpractice. Another jury has recently found that the medical care and pain management Plaintiff has been receiving for the last three years has constituted deliberate indifference to serious medical needs and medical malpractice. Because of the state's responsibility for the past mistreatment of Plaintiff, the federal Court and the state are very desirous of ensuring that Plaintiff and the prison medical staff are advised of the best course of treatment to follow and are confident that UC Davis medical staff can provide a regimen in which all concerned will have confidence. Further, top-ranking CDCR medical staff should take advantage of their personal and professional courtesy relationships with UC Davis medical staff to persuade them to accept Plaintiff for a consultation.

12

University of California at San Francisco (UCSF), and, if within three months thereafter, UCSF does not accept Plaintiff for consultation, the CDCR must use its best efforts to ensure that Plaintiff is referred to and seen by a pain management specialist acceptable to Plaintiff and to Dr. Corey Weinstein. If Plaintiff is not seen by a pain management specialist within three months thereafter, the CDCR shall apply to this Court for guidance.

(6) Within one week from obtaining a pain management regimen recommended by the UC Davis or UCSF clinic or another mutually acceptable pain management specialist, the CDCR shall implement the specialist's recommended pain management regimen and continue that regimen until Dr. Weinstein or the specialist and the CDCR's physician concur in the opinion that Plaintiff's medical needs have changed such that the regimen should be changed or discontinued.

(7) Within one week from the date of this order and until Plaintiff is seen by a pain management specialist and his recommended regimen has commenced, the CDCR shall reinstate the pain medication order that was in effect as of the date Dr. Sayre discontinued Plaintiff's prescription for Tramadol, unless Plaintiff consents, in writing, to a change in the pain medication prescription or the CDCR applies in writing to the Court for a change with written justification from a qualified medical doctor.

The Court shall retain jurisdiction to enforce this order. Beginning two weeks from the date of this order and every three months thereafter, the CDCR shall submit a report to the Court, served on Plaintiff, indicating the status of its performance of the 2002 Settlement Agreement and the Court's order. If disputes arise regarding compliance with the Settlement Agreement or this

order, the Court will appoint Magistrate Judge Nandor Vadas to conduct an evidentiary hearing at the prison and report to the Court.

The clerk of the court shall enter judgment. Plaintiff shall recover his costs of action.

IT IS SO ORDERED.

Dated: February 4, 2010

CLAUDIA WILKEN
United States District Judge

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>FOR THE<br>NORTHERN DISTRICT OF CALIFORNIA | |

ASHKER,

        Plaintiff,

v.

ALAMEIDA ET AL et al,

        Defendant.

Case Number: CV05-03759 CW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 4, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Todd A. Ashker C58191
Pelican Bay State Prison
Box 7500
D1-119
Crescent City, CA 95532

Dated: February 4, 2010

        Richard W. Wieking, Clerk
        By: Ronnie Hersler, Deputy Clerk