1

2

3          IN THE UNITED STATES DISTRICT COURT

4          FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6   TODD A. ASHKER,                    No. C 05-3759 CW

7          Plaintiff,                  ORDER DENYING
                                       PLAINTIFF'S MOTION
8      v.                              FOR
                                       RECONSIDERATION
9   MICHAEL C. SAYRE, et al.,

10         Defendants.

11  _____/

12

13      Plaintiff Todd Ashker moves for reconsideration of the

14  Court's April 9, 2012 Order Regarding Defendant's Progress Reports

15  and Terminating Order for Physical Therapy.  Docket No. 550.

16  Defendant Martin Hoshino[1] opposes the motion.  The motion was

17  decided on the papers.  Having considered all of the papers filed

18  by the parties and the entire record in this case, the Court

19  DENIES Plaintiff's motion.

20                          BACKGROUND

21      On February 4, 2010, the Court entered an Order for Specific

22  Performance in which it ordered Defendant to submit a report every

23  three weeks indicating the status of his performance of the 2002

24  Settlement Agreement between the CDCR and Plaintiff.  The Court

25  _____

26      [1] Pursuant to Federal Rule of Civil Procedure 25(d), the
    Court SUBSTITUTES Secretary Martin Hosino in place of former
27  Secretary of the California Department of Corrections and
    Rehabilitation Matthew Cate.
28

also ordered among other things that CDCR reinstate twice weekly physical therapy sessions to continue until Plaintiff's "medical needs contraindicate the therapy, that is, until a physical therapist not employed by the CDCR certifies in writing to the Court that the therapy is no longer beneficial to Plaintiff." Defendant began submitting timely reports of his progress in complying with the Court's Order for Specific Performance.

In one of his progress reports, Defendant requested that the Court terminate the part of its order requiring that Plaintiff receive physical therapy twice a week.  Defendant submitted the declaration of Ryan Farr, an independent contractor who, since 2009, had been contracted with the CDCR and, since August 2009, had been Plaintiff's physical therapist.  Mr. Farr stated that the physical therapy Plaintiff was receiving was maintaining rather than improving his condition.  Because physical therapists usually do not perform maintenance programs, he would not advise a doctor to prescribe formal physical therapy based on Plaintiff's condition at that time.  With respect to the Court's February 4, 2010 order, Mr. Farr stated that "if the term 'contraindicate' is defined as 'no longer beneficial,' then the physical therapy is contraindicated because it no longer provides a benefit to Mr. Ashker, in that it is not improving Mr. Ashker's condition."  Mr. Farr further stated that if "contraindicate" is defined to mean "harmful," the court-ordered physical therapy would never end because the treatment Plaintiff receives would not be harmful to him.  Moreover, Mr. Farr noted that Plaintiff could easily perform most of the physical therapy exercises on his own, which he was doing at that time.

United States District Court
For the Northern District of California

1    In its April 9, 2012 order, the Court noted that Plaintiff

2  had received copies of Defendant's progress reports and had not

3  filed any objection to Defendant's request to end the physical

4  therapy sessions.  The Court relied on Mr. Farr's opinion that

5  Plaintiff could continue his exercises on his own, and that the

6  sessions were maintaining rather than improving his condition, and

7  granted Defendant's request to vacate the portion of the order

8  requiring that Plaintiff receive physical therapy.

9    On April 30, 2012, Plaintiff filed a motion for leave to file

10 a motion for reconsideration of the Court's April 9 order, stating

11 among other things that he did not believe that he needed to

12 respond to a request set out in Defendant's progress report.  The

13 Court deemed Plaintiff's motion to be his motion for

14 reconsideration and set deadlines for Defendant to file any

15 opposition and Plaintiff to file any reply.  Defendant has opposed

16 the motion and Plaintiff has filed a reply.

17                          DISCUSSION[2]

18 I.   Physical Therapist Ryan Farr

19    The Court's February 4, 2010 order required that the

20 certification that Plaintiff's medical needs contraindicate

21

22    [2] Defendant asserts that Plaintiff's motion fails on
   procedural grounds, because he cannot satisfy Local Rule 7-9(b)'s
23 requirement that "a material difference in fact or law exists from
   that which was presented to the Court before entry" of the order
24 at issue; "emergence of new material facts or a chance of law;" or
   "[a] manifest failure by the Court to consider material facts or
25 dispositive legal arguments which were presented to the Court."
   Because the Court denies Plaintiff's motion for reconsideration it
26 need not decide whether Local Rule 7-9(b) applies in this case,
   where pro se Plaintiff did not believe he needed to respond to a
27 request set out in Defendant's progress report.

28

                                3

physical therapy be made by "a physical therapist not employed by the CDCR." According to Mr. Farr's declaration, he is "an independent contractor, and [has] been contracted with the California Department of Corrections and Rehabilitation since August, 2009." Farr Declaration at ¶ 1. Plaintiff argues that Mr. Farr's certification is not sufficient to satisfy the Court's order, because he is a "contract employee" of CDCR and therefore is not neutral.

Plaintiff cites several cases related to the question of whether medical personnel contracted by a government entity are state actors for purposes of section 1983 liability. See, e.g., West v. Atkins, 487 U.S. 42, 54-57 (1988). However, the ability to sue Mr. Farr pursuant to section 1983 is not at issue. The relevant question is whether Mr. Farr is "employed by the CDCR." Plaintiff has presented no evidence to contradict Mr. Farr's declaration that he is an independent contractor contracted by CDCR.

II.   Whether the Physical Therapy is "Contraindicated"

Plaintiff next argues that, because the physical therapy continues to be "beneficial," it was improper to discontinue the sessions. In particular, Plaintiff cites the portion of Mr. Farr's declaration which states, "The whirlpool provides increased circulation and has been helpful in temporarily decreasing Mr. Ashker's discomfort." Farr Dec. ¶ 5. Plaintiff asserts that this constitutes an admission by Mr. Farr that Plaintiff continues to benefit from the physical therapy sessions. However, Mr. Farr qualified his statement regarding the whirlpool by stating that

4

"modalities such as this are temporary in benefit and are not customarily used at this stage of treatment." Id. Mr. Farr further opined that the whirlpool "may temporarily 'feel good,' but it provides no long-term benefit." Farr Dec. ¶ 9.

Moreover, Plaintiff bases his argument that physical therapy should continue so long as he receives any benefit on the Court's February 4, 2010 order which provided that physical therapy "shall continue until Plaintiff's medical needs contraindicate the therapy, that is, until a physical therapist not employed by the CDCR certifies in writing to the Court that the therapy is no longer beneficial to Plaintiff." While read in isolation, this provision could be construed to require that physical therapy be continued so long as it provides any benefit to Plaintiff. However, when read in context of the provision of the Settlement Agreement it was interpreting, it is more limited. The quoted language from the Court's order was based on the following portion of the 2002 Settlement Agreement:

> The Releasees agree to reinstate Releasor's receipt of the physical therapy he was previously receiving to rehabilitate his arm. The physical therapy shall continue until a change in Releasor's medical needs contraindicate the therapy.

2002 Settlement Agreement, ¶ 4. When ordering specific performance, the Court cannot order any party to do more than was agreed to in the initial contract, in this case the 2002 Settlement Agreement.

Here, the Settlement Agreement provides that the purpose of the physical therapy is to "rehabilitate" Plaintiff's arm. According to Mr. Farr, Plaintiff's physical therapy "acts as a

maintenance program to maintain his present level of functionality." Farr Dec. ¶ 5. In other words, the physical therapy is no longer rehabilitating Plaintiff's arm. Indeed, the evidence Plaintiff submits supports a finding that the physical therapy provides temporary pain relief rather than rehabilitation. For example, Plaintiff declares that "the hot whirlpool sessions . . . [help] with the movement and pain for several hours, or longer (the rest of the day) depending on activity (use) afterwards" and describes the physical therapy as part of his "arm maintenance-pain management regimen." Ashker Dec. ¶¶ 7,8.

Again, the Court credits Mr. Farr's opinion that, at this point, physical therapy is acting as a maintenance program instead of improving Plaintiff's medical condition and that Plaintiff, on his own, can and does perform most of the exercises to maintain his level of functioning. Plaintiff declares that stopping the whirlpool treatments "has effected [him] mentally and physically." Ashker Dec. ¶ 8. Specifically, Plaintiff asserts that he has had to "cut back on [his] in cell exercises due to increase in pain brought on by loss of whirlpool, loss of writing asst., cuts in pain medication." Id. However, this is not sufficient to establish that the termination of the whirlpool sessions will lead to deterioration in the condition of Plaintiff's arm, or that the whirlpool sessions are a beneficial part of the rehabilitation of his arm.

CONCLUSION

For the reasons stated above, the Court reaffirms its order granting Defendant's request to vacate the part of its Order

requiring that Plaintiff receive physical therapy.  Plaintiff's
motion for reconsideration is DENIED.  Docket No. 551.


    IT IS SO ORDERED.


Dated:  1/28/2013

                                        CLAUDIA WILKEN
                                        United States District Judge

United States District Court
For the Northern District of California